Stewart, J.
This is a proceeding in error to reverse an order made by the court of common pleas in the distribution of a fund betwéen the plaintiffs in error and the defendants in error, who are creditors attaching certain goods.
The record shows that on April 15,1884; the plaintiffs in error brought suit against one George W. Clay, upon an account for goods sold and delivered to him, as averred in the petition, at his request, “ by the description of G. W. Clay & Bro.”
*111 The petition then averring that no part of the account is due, proceeds as follows: “The defendant G. W. Clay has sold, conveyed, and otherwise disposed of his property, with the'fraudulent intent to chéat and defraud his creditors,” and therefore they bring their action before the claim is due. An affidavit for an attachment made by the agent of plaintiffs is filed at the same time, averring in substance the same matters set forth in the petition, except that the means and manner of the disposal of the property in fraudulent intent is more fully described. An attachment was allowed by the court, and a writ of attachment against G. W. Clay, and garnishee against the Columbus Transfer Company issued the same day, which was the same day levied by the sheriff upon certain goods and chattels of the value of $6,602.30.
The return of the sheriff on his writ avers, that he attached the property in obedience to the writ of attachment; filed with his return is an account of his expenses in making inventory and appraisement of 68 cases of dry goods and notions, the property of G. W. Clay & Bro.
Subsequently, on April 21, 1884, the plaintiffs in error filed an amendment to their petition, entitling it B. W. Putnam, and J. G. Hooker, plaintiffs, v. G. W. Clay & Bro., defendants, alleging that at the time of filing their original petition “ they did not know that one John Clay, a brother of defendant, was a partner of the said G. W. Clay, but have since learned that the goods mentioned in the petition were sold and delivered by the plaintiffs to the saidG.W. Clay & John Clay, partners doing business in the firm name of G. W. Clay & Bro.,” and adopting all the- allegations of the original petition “ as if made against G. W. Clay & Bro.-,” they ask judgment against them as in their petition.
Upon the filing of this .amendment a summons was issued to the sheriff of this county for John Clay, and returned “ not found.”
An affidavit for publication under clause 3, of sec. 5048, upon G. W. Clay and John Clay was filed, and publication was made, which averred among other things that the plaintiffs secured an attachment, and that the same was levied on certain drygoods and merchandise of said G. W. Clay and John Clay. ■' • ’
*112 On July 5,1884, an entry was made, showing a judgment by default in favor of plaintiffs against' the defendants, for the sum of $57.50, being for so much of plaintiffs’ claim as was due, and costs, which seems were ordered to be paid to plaintiffs or- their attorhey with interest from the funds in the hands of the sheriff, under an order in the common pleas court iri the case of Jacob Datz v. G. W. Clay & Bro., and it was “ further ordered that the residue of said fund remain in the hands of said sheriff to meet the residue of said plaintiffs’ claim, being $312.50, which Will fall due August 1st, 1884.” And the cause was -ordered to remain on the docket for further order of the court herein. The record then discloses the entry, of distribution in the case of Jacob Datz v. G. W. Clay & Bro., in which the last entry recites the fund out of which the plaintiffs’ claim is to be paid. The entry shows that the goods had been sold under former order, and that the order of priorities of lien is established as follows:
1st. Columbus Transfer Co. Storage, etc.
2nd. It is ordered that the-sheriff retain in his hands, after the payment of the first lien, the sum oi $520.00, to meet the claim of Putnam; Horker & Co., and the costs, the same being in dispute, u in case the same shall be held a good and valid lien.” ■
'It then finds the order and amount-of several liens, until as the ninth lien, we' find the claim of defendants in error, /amounting to $2392.73, and costs.
The fund amounting to $5823.35 is then ordered to be distributed among the l-ienholders in the order of -their priority except to plaintiffs in error, the sheriff being ordered to reserve $520.00, in order to meet their claim in case it should be found valid, and-pays all the balance-down to defendants in error, who only receive $1629.00.
This is all done before the entry of July 5, 1886, in the case of Putnam, Hooker & Co. v. Clay. Subsequently, the ease of Datz v. Clay was ordered re-docketed on the motion of defendants in error and with consent of Jacob Datz, and plaintiffs in error orally moved the court therein for an order directing the sheriff to pay them,-out of the funds in his hands; the amount due thereon, and defendants in error moved the court to order the sheriff to distribute the fund to them.
*113 This motion was filed the same day that judgment was rendered in favor of plaintiffs in.error. Afterwards the defendants in error moved the court to set aside so much of the entry of judgment in favor of plaintiffs, as ordered the sheriff to pay over any of the funds in his hands to plaintiffs in error, so far as the same affected their right to priority of lien thereon. These two motions of defendants, and one of plaintiffs, were heard by consent of parties, and defendants’ [motions were sustained by the court, the oral motion of plaintiffs amended, their motion for a hearing amended, and thereby the errors complained of arise:
The errors complained of are :
1st. That the court had no jurisdiction to hear and deliver in the question of priority in the manner it did.
2ud. The court had no power to set aside the order in the case of the plaintiffs against Clay ordering distribution of the fund in sheriff’s hands to them.
3rd. If these claims are not sustained, then upon the evidence presented to the court, all of which appears in the bill of exceptions, and which is substantially hereinbefore set forth, the plaintiffs were entitled to priority; and as one element to be taken into consideration is the fact that the advertisement in error, made t‘o obtain service by publication, although correct in other respects, sets forth that certain goods etc. of George W. Clay'have|been attached in said action, and does not claim that any goods of George W. Clay and John Clay, or G. W. Clay & Bro. have been attached.
Examining these several claims in their order, we may say as to the first, that althoughfsuch relief as the sharing in the distribution of funds arising from the sale of attached property, might be obtained by bringing a suit in the nature of a creditor’s bill, yet there are other ways recognized by our laws and decisions.
. In the case of Ward v. Howard, 12 Ohio St., 158, 160, Gholson, J., says, in speaking’of such a fund : “ The statute provides that others"may acquire an interest-in the same fund by their orders of attachment, which is analogous, though the rules of priority mayfdiffer, to the ease of levies of different executions issuedf after judgments. The rights of • parties *114 thus claiming an interest in a fund, may be presented to the court for adjudication as upon a motion for the distribution of the fund in the hands of the officer” (as was done in this case) “ or a reference under section 225, of the code ” (now § 5559, Rev. Stats.), “or should the nature of the case require, in an action bringing all the parties interested before the court.” And the same mode of procedure seems to be recognized in Harrison & Wiley v. King, 9 Ohio St., 388.
There can be no question from this record, that nobody except these plaintiffs and these defendants were interested in this fund, and it certainly did not require that a creditor’s bill should be filed to determine that. And further than that the record shows, that the plaintiffs themselves submitted their motion to distribute, and agreed that defendants’ motion for a like purpose might be heard by the court, and they do not seem to have discovered that there was irregularity in the mode of procedure until after the adverse decision.
Having not only-submitted to, but invoked the-action of the court by motion to distribute the fund, they cannot now be heard to dispute its right to act upon that motion.
As to the second ground of error alleged, we cannot see why the matter was not within the jurisdiction and power of the court.
There-was no attempt here made to have the court set aside a judgment; but the motion of Loeb & Schoenfeld was that the court should set aside so much of the order directing the sheriff to pay the judgment of plaintiffs in error out of the fund in his hands in the case of Datz v. Clay & Bro., as affected their rights therein. The goods had been sold in that action; all -the attaching creditors were parties to that action ; the funds realized from the sale of the property undistributed were in the hands of the officer of the court in that case, reserved for the express purpose of determining the rights of the plaintiffs to that fund ; it therefore followed that in another case it was irregular for the court to order the funds paid to plaintiffs; it was an order the court would not have made if advised of the facts, and the court properly, as soon as advised thereof, set it aside and relegated the parties to the Datz case for their money. Plaintiffs do not seem to have placed *115 any reliance upon the validity of that order, for ignoring the same, they made application to the court in the Datz case for an order of distribution; nor could it affect the rights of defendants in error who were not parties to the other action. We find nothing improper or erroneous in this ruling of the court.
When a fund is in court, and all parties entitled to it are before the court, ahd the case is pending for distribution, one of the parties can not in another case take any order as to the order of distribution, to the prejudice of those not parties to that action.
Did the court err in holding that Loeb & Schoenfeld were entitled to priority?
It is very clear that no attachment was ever issued by plaintiffs in error against Gf. W. Clay & Bro.; their suit was commenced and their attachment issued against G. W. Clay ; when they levied upon these goods which the record shows were the goods of G. W. Clay & Bro., they obtained a lien upon the interest of G. W. Clay therein, which was whatever remained after the satisfaction of partnership creditors.
But it is claimed, thát by the amendment this defect was cured, and that by amending the petition by bringing in John Clay, and making the action against G. W. Clay & Bro., the attachment lien attached.
Suppose instead of amending the petition so as to make his suit against G. W. Clay & Bro., he had amended so as to make it against John Clay alone, averring that he had found out that John Clay, and not G. W. Clay, was his debtor; would it have been claimed that the attachment issued would stand as an attachment of John Clay’s property? We think not, unless Judge Simeon Nash’s ideas of the power of amendments under the code are correct. Bliss on Code Pleading, sec. 429, says, that a plaintiff has not a right to amend so as to state an entirely new cause of action ; that in such a case he has not made an amendment, but a new bill.
In the case of Levy v. District Grand Lodge (Sup. Ct. Cinti.) 5 Rec., 410 (3 W. L. B., 16), it was held that filing an amended petition making different parties defendants, is an abandonment of the case against the original defendants, and entitles them to a dismissal, and the case should be docketed and num *116 bered as a new action. And in Bates PL, p. 62 (6), it is said, that neither under sec. 5013, or 5114, where in a suit against A. for money had and received, it appears that it was received by A. & B., can B. be brought in, for it would be equivalent to a new action. And again, page 165: In Ohio a substantial change of the cause of action is not permissible as an amendment.
We are referred to the case of Constable & Co. v. Geo. White, 1 Handy, 44, in which Gholson, J., says : “ If the petition is defective, it is a subject of amendment, and such amendment might be made without prejudice to the attachment,” and it is claimed as an authority to sustain the attachment in this case. But if we understand this case, the plaintiffs in error claim that the amendment of their petition affected their attachment to such an extent that it enlarged it; that whereas the affidavit and writ were against Geo. W. Clay, the moment the petition was amended making a cause of action against G. W. Clay & Bro. eo instante the affidavit and the writ became hy operation of law directed against G. W. Clay & Bro. This is something different from what Judge Gholson says. But looking further in the same volume of Handy’s Reports, we find at page 573 in the case of Smead v. Chrisfield it was held il that after service in attachment the court will not allow the petition to be amended by setting up a new cause of action,” and dismissed the amended petition. And again, on p. 574, in Dobell v. Loker, it was held: 1st. That an attachment cannot be issued against a non-resident firm in their firm name.
2nd. That while there might not be any objection to amending the petition by inserting the individual names of the partners, the writ of attachment could not be amended by inserting their individual names, for it would affect substantial rights.
So that it seems to us, that while it may be true that after an attachment issued a petition, if defective, may be amended-without prejudice to the attachment, it must be amended within the meaning of that term; and a change which makes a new cause of action against new parties, is not an amendment, but a new action. And in addition it is very clear, upon principle, *117 that a petition cannot be amended so as to enlarge the scope of an attachment.
W. J. Gilmore, for plaintiffs in error.
Watson & Burr, for defendants in error.
Upon the amendment in this case, no affidavit and no writ of attachment was ever issued. As we view this amendment, it did not gdve the plaintiffs any attachment upon the goods as against the creditors of G. W. Clay & Bro. It therefore follows, that as against Loeb & Shoenfeld, partnership creditors,, they were not entitled to priority in the distribution of the fund arising from the sale of partnership property.
They may stand upon their rights under their attachment, and if anything remains to G. W. Clay, they undoubtedly might obtain it.
This was not an attack by defendants because of irregularities and defects in the attachment, but for want of ¿my attachment, going to the very foundation of the case, and showing that they were not entitled to any order of distribution prior to defendants; and it is therefore such a fatal defect as could be taken advantage of by other attaching creditors. 12 Ohio St., 158; 35 Ohio St,, 665.
The mistake in the notice by publication of defendants was a mere irregularity, and while it might have been taken advantage of by G. W. Clay & Bro., does not render their judgment void; and being unreversed or modified, must stand as a valid judgment, as it was rendered by a court having jurisdiction of the parties acquired by the issuing of an attachment founded on the requisite affidavit and the attaching of their property. (19 Ohio St., 296.) So that this presented no reason for setting aside the order of priority as found upon the original hearing of the motion. Upon an examination of the record finding no error in the judgment below, it will be affirmed with costs.